UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RYAN A. HOGAN and KRISTIN THATCHER, individually and as parent and next friend of their minor child, R.W.H., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 13-603S |
| WAL-MART STORES EAST, L.P., a/k/a WAL-MART STORES EAST, INC., IRON OUT, INC., a/k/a SUMMIT BRANDS, JOHN DOES 1-10, JANE ROES 1-10, ABC, LLCs 1-10, and XYZ CORPORATIONS 1-10, Defendants. | : : : : : : : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      This suit was filed on July 19, 2013, in the Providence County Superior Court for the State of Rhode Island by the parents (Ryan A. Hogan and Kristin Thatcher) of R.W.H., for themselves and on behalf of their two-year-old son. Their claim arises from an incident that occurred at the Wal-Mart Supercenter Store in Coventry, Rhode Island, operated by Defendant Wal-Mart Stores East, L.P., a/k/a Wal-Mart Stores East, Inc. ("Wal-Mart"), when R.W.H. handled and ingested a drain cleaner product containing sodium hydroxide and sodium nitrate, manufactured by Defendant Iron Out, Inc., a/k/a Summit Brands ("Iron Out"). Iron Out removed the action to this Court, with the consent of Wal-Mart, based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiffs promptly moved to remand, arguing that the amount in controversy is less than the minimum required in diversity cases, and for sanctions against Iron Out under Fed. R. Civ. P. 11. Iron Out has objected to the motion and Wal-Mart takes no

position. For the reasons that follow, I recommend that Plaintiffs' motion to remand and for sanctions, which has been referred to me for report and recommendation,[1] be denied. ECF No. 4.

## I. BACKGROUND FACTS[2]

On September 19, 2010, two-year-old R.W.H. was brought by his father on a family shopping trip to Wal-Mart. ECF No. 1-1 ¶ 15. In the plumbing department of the store, while his father was momentarily distracted, the child was able to reach a container of Iron Out's drain cleaner, remove the safety cap and consume some of the caustic crystallized contents of the container. Id. ¶¶ 16-18. The drain cleaner was displayed within reach of a two-year-old despite a label advising that it should be kept on a high shelf or locked cabinet and stating:

> POISON: KEEP OUT OF REACH OF CHILDREN. CAUSES SEVERE BURNS ON CONTACT. HARMFUL OR FATAL IF SWALLOWED OR MISUSED.

Id. ¶¶ 10-12.

After ingesting the caustic chemicals, R.W.H. was rushed by rescue to the emergency room, where he was admitted to the hospital for "serious injuries," including chemical burns to

---

[1] The First Circuit has declined to address whether a motion to remand is dispositive or non-dispositive for Fed. R. Civ. P. 72 purposes. Hopkins v. Buffalo Pumps, Inc., C.A. 09-181S, 2009 WL 4496053, at *2 (D.R.I. Dec. 1, 2009) (citing Cok v. Family Court of R.I., 985 F.2d 32, 34 (1st Cir. 1993)). In this District, Judge Lagueux has held that a motion to remand is non-dispositive and can be determined by a magistrate judge by memorandum and order. See, e.g., Blue Cross & Blue Shield of R.I. v. Korsen, 746 F. Supp. 2d 375, 379 (D.R.I. 2010). In Hopkins, Judge Smith conducted *de novo* review of a motion to remand after he flagged the issue for the parties and no one objected to the issuance of a report and recommendation in lieu of a memorandum and order. 2009 WL 4496053, at *2. I address this motion through a report and recommendation because that is how it was referred to me.

[2] These facts come from the complaint, whose facts are assumed to be true, as well as from the evidence offered by both parties in connection with the hearing on the motion to remand. This evidence consists principally of communications between counsel regarding settlement and a demand for a stipulation regarding the value of the case. In addition, at the hearing on the motion, one exhibit was offered by Defendant Iron Out – it is a Providence Journal article dated September 18, 2013, describing the incident, which recounts statements by the mother and the family's attorney. In addition to acquiescing to its authenticity and admissibility, Plaintiffs stipulated that the statements in the article attributed to them and their counsel may be relied on for their truth. Accordingly, this newspaper account of the incident was admitted as a full exhibit and constitutes evidence appropriate for consideration in connection with this motion to remand (hereinafter either "Ex. A" or "the Providence Journal article").

his mouth, ulcers on his tonsils and upper gastrointestinal pain. Id. ¶¶ 15-21; Ex. A. During the hospitalization, R.W.H. almost needed a tracheotomy; he was placed on a breathing tube and injected with drugs to calm him and prevent him from thrashing, kicking and gasping for breath. Ex. A. His mother described the experience as "horrible." Id. He remained hospitalized for several days during which his injuries initially were exacerbated by the effects of the caustic chemicals. ECF No. 1-1 ¶¶ 56-58; Ex. A. It took several weeks for R.W.H.'s ulcers to heal sufficiently so that he could eat solid food. Ex. A. The complaint alleges that, in addition to his pain, physical injuries and the medical treatment he received, R.W.H. "has otherwise been greatly damnified." ECF No. 1-1 ¶ 20. His parents have separately sued for loss of consortium, claiming severe emotional distress resulting in physical manifestations and lost income, among other damages. Id. ¶¶ 21, 55-63.

After engaging litigation counsel, but before the filing of the suit, Plaintiffs had settlement negotiations with Defendant Wal-Mart that are relevant to this motion to remand. ECF No. 5-1. By letter dated May 28, 2013, Plaintiffs, through their litigation counsel, made a settlement demand for $74,500 that counsel characterized as "a last good-faith effort to settle this matter." Significantly, this letter also states that, "We have reexamined this case and now believe that the settlement value is less than our initial demand."[3] This settlement effort was unsuccessful – a complaint was filed naming both Wal-Mart and Iron Out in the Superior Court on July 19, 2013. Consistent with Rhode Island law, the complaint does not contain an *ad damnum* or claim for any monetary amount; the filing of the action in the Superior Court permits

---

[3] The amount of Plaintiffs' initial demand to Wal-Mart is not in the record.

the inference only that the damages are at least sufficient to invoke its jurisdiction ($5,000[4]). R.I. Gen. Laws § 9-1-30(a) ("No complaint . . . shall contain an ad damnum or monetary amount claimed . . . .").

The record on this remand motion includes post-complaint e-mail correspondence regarding settlement between counsel for Plaintiffs and Defendant Iron Out. ECF No. 11-1 at 2. Specifically, on September 12, 2013, Plaintiffs' litigation counsel wrote, "[O]ur clients are still willing to settle this matter against all defendants for $74,999 plus interest and costs." Id. Iron Out, through its counsel, responded to this demand with a request for additional information and documentation of the claim[5] so that it could "fully evaluate plaintiffs' claims." Id. Meanwhile, after the Superior Court complaint was served on Iron Out, its counsel advised Plaintiffs of its intent to remove the case to federal court unless Plaintiffs brought the amount in controversy to a level below $75,000, the federal jurisdictional minimum, by stipulating to a cap on their maximum allowable recovery of $74,999 exclusive of interest and costs. Plaintiffs declined and the case was removed on August 22, 2013. ECF No. 5-2 at 3-4.

Iron Out's notice of removal recites that "the amount in controversy exceeds $75,000." ECF No. 1 at 2. This motion to remand followed; in reliance on the settlement communications in which demand was made for just under $75,000, Plaintiffs argue that the diversity jurisdiction minimum has not been established to the requisite "legal certainty." See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). Plaintiffs do not dispute that the parties are diverse.

---

[4] The Rhode Island Superior Court has original jurisdiction over civil actions at law where the amount in controversy is more than $10,000. It has concurrent original jurisdiction with the Rhode Island District Court over actions involving between $5,000 and $10,000. R.I. Gen. Laws § 8-2-14.

[5] As of the hearing on the motion to remand, no such information had been provided to Iron Out.

4

## II. LEGAL PRINCIPLES AND ANALYSIS

Diversity jurisdiction exists only where there is complete diversity of citizenship between all plaintiffs and all defendants, and the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). A case asserting state law claims and filed in state court may be removed by a defendant to federal court, if there is both diversity of citizenship and a sufficient amount in controversy pursuant to 28 U.S.C. § 1446(b)-(c). In light of the responsibility of federal courts to police the borders of federal jurisdiction, as well as principles of federalism and comity, removal statutes are to be strictly construed against removal. Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001); Porter v. Am. Heritage Life Ins. Co., C.A. No. 13-160, 2013 WL 3894121, at *2 (D.R.I. July 30, 2013) (citing Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11 (1st Cir. 2004)). In considering a motion to remand, this Court must remain mindful that the plaintiff as "master of the claim" is afforded liberality in being permitted to pursue claims in the court of choice. Porter, 2013 WL 3894121, at *2 (bedrock principles of removal jurisdiction make burden heavier for defendant seeking to remove).

Congress recently clarified the statutory framework in 28 U.S.C. § 1446(c) for addressing the jurisdictional amount in cases removed on or after January 6, 2012, based on federal diversity jurisdiction. Federal Courts Jurisdiction & Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103(b), 125 Stat. 758, 760-61. While formerly the analysis was guided by case law, now it must be informed by the statute itself.[6] Nevertheless, because the statutory provisions are largely consistent with pre-revision precedent, this Court should look to that precedent to the extent the statute is silent. See Garcia v. Geovera Specialty Ins. Co., No. 7:13-CV-114, 2013 WL 1967799, at *1 (S.D. Tex. May 10, 2013).

---

[6] The parties briefed and argued the pre-revision version of 28 U.S.C. § 1446. Accordingly, the Court allowed them to file supplemental briefs to address the legal standard set out in the current version of § 1446, which is applicable to this case as it was filed after January 6, 2012.

5

As amended, § 1446(c)(2)(A) permits the notice of removal to assert the amount in controversy whenever the case seeks a money judgment but does not demand a specific sum based on "State practice." With Rhode Island law prohibiting an *ad damnum*, R.I. Gen. Laws § 9-1-30(a), and Plaintiffs plainly seeking money damages, Iron Out's petition to remove complied with this requirement. The amended version of § 1446 further provides that removal is proper if "the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000. 28 U.S.C. § 1446(c)(2)(B).

The burden of establishing federal jurisdiction remains on the party seeking removal, here Iron Out. Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009); Providence Piers, LLC v. SMM New England, Inc., No. CA 12-532-S, 2013 WL 178183, at *3 (D.R.I. Jan. 16, 2013). Thus, this motion to remand should be denied if the Court finds by a preponderance of the evidence that the amount in controversy exceeds $75,000 and Plaintiffs are unable to counter this showing by demonstrating that there is a legal certainty that the claim is really for less than the jurisdictional amount. Costin v. Ally Bank Corp., No. 7:13-CV-113-BO, 2013 WL 4828576, at *2-3 (E.D.N.C. Sept. 10, 2013) (when defendant sustains burden of demonstrating by preponderance of evidence that total value of plaintiff's claims exceeds $200,000, motion to remand denied); Sheppard v. Google, Inc., No. 4:12-CV-04022, 2012 WL 6086867, at *6 (W.D. Ark. Dec. 6, 2012) (if defendant meets its burden, plaintiff can defeat jurisdiction only if it appears to legal certainty that claim is really for less than jurisdictional amount) (quoting St. Paul Mercury Indem. Co., 303 U.S. at 289).

In making the determination, this Court must adhere to the following additional considerations articulated by the First Circuit: first, if the jurisdictional amount is not facially apparent from the complaint, the court may look to the notice of removal and any other materials

submitted by the parties; second, a court may consider which party has better access to the relevant information; third, the court's analysis of the amount in controversy focuses on the time of removal; and fourth, this preliminary determination concerning whether a defendant has met its burden should be done quickly, without an extensive fact-finding inquiry. Amoche, 556 F.3d at 48; Spielman, 251 F.3d at 4; Toro v. CSX Intermodal Terminals, Inc., No. 12-40115-TSH, 2013 WL 593947, at *4 (D. Mass. Feb. 14, 2013); Reynolds v. World Courier Ground, Inc., 272 F.R.D. 284, 286 (D. Mass. 2011). This Court must also remain cognizant that diversity jurisdiction may not be satisfied by aggregation of the claims of various plaintiffs. Clark v. Paul Gray, Inc., 306 U.S. 583, 589 (1939) (multiple plaintiffs cannot combine claims to clear amount-in-controversy bar), overruled on other grounds, Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005). Thus, each plaintiff's claim must be examined separately – here, I focus on the value of the claims of R.W.H., the child who experienced the injury. If his claims met the jurisdictional minimum at the time of removal, this Court may exercise supplemental jurisdiction over his parent's claims as long as complete diversity exists. Exxon Mobil Corp., 545 U.S. at 566-67 (so long as one plaintiff in diversity case satisfies amount-in-controversy requirement, 28 U.S.C. § 1367 operates to grant supplemental jurisdiction to jurisdictionally-insufficient claims of other plaintiffs).

      The types of damages considered as part of the amount in controversy are those permitted by the state-law cause of action alleged in the complaint. See Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 42 (1st Cir. 2012); Gabrielle v. Allegro Resorts Hotels, 210 F. Supp. 2d 62, 65 (D.R.I. 2002) (amount in controversy measured by reasonable reading of value of rights being litigated). As this Court has described it, the amount in controversy is measured by the damages that the plaintiff might recover, assuming that the allegations in the complaint are true.

Providence Piers, LLC, 2013 WL 178183, at *3; see Costin, 2013 WL 4828576, at *2 (amount in controversy depends on amount that plaintiff might recover). While a settlement demand is relevant evidence of the amount in controversy, it is not dispositive. Doughty v. Hyster New England, Inc., 344 F. Supp. 2d 217, 219 (D. Me. 2004); Ramchandra v. Amtrak Nat. R.R. Corp., 345 F. Supp. 2d 33, 34 (D. Mass. 2004). "A party's offer to settle a case for a specified amount does not reduce the amount in controversy by that amount." Freeland v. Liberty Mut. Fire Ins. Co., 632 F.3d 250, 253 (6th Cir. 2011). For example, if a plaintiff sues a defendant for $100,000, the defendant cannot defeat diversity jurisdiction simply by offering to settle the case for $40,000. Id.; see Pollet v. Sears Roebuck & Co., 46 F. App'x 226, at *1 n.5 (5th Cir. 2002) (per curiam) (plaintiff's settlement offer ordinarily less than expected damages at trial because offer discounts risk of losing; plaintiff's offers of $42,000 and $50,000 do not persuasively suggest claims worth less than $75,000).

The starting point for the analysis of the amount placed in controversy by R.W.H.'s claim is the description of the incident as laid out in the complaint and the Providence Journal article. In considering its value, the Court should rely on judicial experience and common sense. See Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 (11th Cir. 2010) (court applies judicial experience and common sense); Porter, 2013 WL 3894121, at *4 (common sense principles applied to evidence leading to conclusion defendant did not sustain its burden). For example, in Costin, 2013 WL 4828576, at *2, the court denied the motion to remand based on the finding that the claim that defendant caused plaintiff's heart attack could be valued by reference to an estimate of the cost of hospitalization, coupled with the principle that general damages for mental suffering and emotional distress are a multiple of such costs. Id. at *3. Similarly, in Gabrielle, the court looked at the complaint's description of the "bodily injuries and

psychological injuries" and the medical treatment; despite the lack of any specific information about the cost of treatment, it concluded that the description in the pleading was sufficient to establish by a preponderance that the amount in controversy exceeded $75,000.  210 F. Supp. 2d at 65-66; see Roe, 613 F.3d at 1065-66 (despite lack of concrete cost evidence, court may use its common sense to conclude that complaint alleging death caused by reckless disregard of safety satisfies jurisdictional minimum).

A common sense look at R.W.H.'s allegedly serious injuries permits the inference that there is more than $75,000 in controversy here.  R.W.H.'s medical treatment included an ambulance to get him to the hospital, a multi-day hospitalization and aggressive treatment, not only of his burns, but also to assure that he was able to breath.  His condition, in part as a result of persistent ulcers caused by the caustic chemicals, continued to prevent him from eating solid food for several weeks.  Such a serious claim gives rise to the potential for significant damages exceeding $75,000.  See Scott v. Dorel Juvenile Grp. Inc., No. 3:09-cv-0799, 28 Nat. J.V.R.A. 7:8, 2013 WL 4105092, at *1 (N.D. Tex. Feb. 11, 2013) (child cannot eat or speak after imbibing Drano while parents distracted, plaintiffs asked jury for $30 million in damages); Moreno v. Guevara, JAS MD Ref. No. 76116WL, 2000 WL 33314733, at *1 (Md. Cir. Ct. Nov. 22, 2000) (parties stipulated to $100,000 in damages and held trial on liability concerning two-year-old child who drank oven cleaner leading to burned esophagus and vocal cords); Hicks v. Harris, JVR No. 224561, 1996 WL 1044352, at *1 (Okl. Dist. Ct. 1996) (parties settled for $100,000 after child suffered burns to mouth, esophagus and stomach from drinking Drano); Personal Injury Valuation Handbook, "Basic Injury Values for Claims Involving Digestive Tract Injuries," 2011 WL 5528269 (West 2011) (median award for stomach injuries is $350,000); "Basic Injury Values for Claims Involving Burn Injuries," 2011 WL 5528268 (when total

medical expenses for non-internal moderate burn injury in child exceed $4,000, basic injury value is $92,988). This perspective on valuation is affirmed by statements (intended to be self-serving) made by Plaintiffs' counsel during argument on this motion: "[A]lthough at the time of removal we believe it is below the $75,000, if we find out that this is common practice that the defendants are engaging in, this case could be worth well over that . . . [W]e never said that we couldn't recover over $75,000."

Along with the claims themselves and the representation of Plaintiffs' counsel that the potential recovery could well exceed $75,000, this Court may also consider evidence of the parties' settlement discussions, which tip toward confirming that what is at stake in this case exceeds the minimum jurisdictional amount. Messier v. Ace Am. Ins. Co., 12-CV-892-JD, 2013 WL 5423716, at *1 (D.R.I. Sept. 26, 2013) ("Even though settlement offers are inadmissible to prove liability under Rule 408 . . . , they are admissible to show that the amount in controversy for jurisdictional purposes has not been met."); Wright Family Invs., LLC v. Jordan Carriers, Inc., No. 12-cv-0826, 2012 WL 2457664, at *2-4 (W.D. La. June 25, 2012) (pre-suit settlement demand for approximately $8,000 is some evidence that jurisdictional minimum not met). In this regard, I find pertinent Plaintiffs' pre-filing "last good-faith" settlement demand for $74,500, which is characterized as "settlement value [that] is less than our initial demand." ECF No. 5-1. Far from suggesting that R.W.H.'s claim is worth less than $75,000, as Plaintiffs argue, this communication permits the inference that Plaintiffs' full estimate of the value of their claims well exceeds $74,500, thus pushing it over the jurisdictional minimum. This inference is buttressed by the reality that Plaintiffs are in possession of key information bearing on case value (the amount of the medical expenses), yet have failed to provide any of it to Defendants or to this Court. See Toro, 2013 WL 593947, at *4 (court may consider which party has better access to

relevant information). Cf. Garcia, 2013 WL 1967799, at *3 (lack of demand letter from which court could infer plaintiffs' estimate of case value coupled with vague pleading reeks of "hide-the-ball chicanery" that should not be condoned).

A final factor potentially bearing on whether this case satisfies the diversity minimum amount in controversy is Plaintiffs' refusal to agree to a binding stipulation capping potential recovery at $75,000.[7] There is no question that removal may properly be defeated by adding to the complaint a binding stipulation promising not to seek damages greater than the jurisdictional minimum. Bell v. Hershey, Co., 557 F.3d 953, 958 (8th Cir. 2009). Such a stipulation will be enforced by a federal court, resulting in remand despite a claim as to which the plaintiff may justly be entitled to more. Sheppard, 2012 WL 6086867, at *6.

This Court has held that an expression of opinion by plaintiffs' counsel that the case was worth less than $75,000 is afforded little weight when counsel is unwilling to stipulate that plaintiff would not seek more than $75,000. Gabrielle, 210 F. Supp. 2d at 66. On the other hand, courts have declined to find a plaintiff's refusal to stipulate to an amount less than the jurisdictional threshold – standing alone – sufficient to justify a finding of jurisdiction. Butler v. Target Corp., No. 12-4092-SAC, 2012 WL 5362974, at *4 (D. Kan. Oct. 31, 2012); Martin v. Wal-Mart Stores, Inc., 709 F. Supp. 2d 345, 350 (D.N.J. 2010); see Schillaci v. WalMart, 2012 WL 4056758, at *2 (W.D. Pa. Sept. 14, 2012). Rather, courts have relied on the plaintiff's non-responsiveness to a pre-removal inquiry regarding his willingness to stipulate that the amount in controversy is less than $75,000 as some evidence bearing on the value of the matter as of the

---

[7] Plaintiffs argue that Iron Out's threat to remove unless the claims are capped is sanctionable. This is simply wrong. A defendant's statement of its intent to remove unless it receives a stipulation capping damages below the jurisdictional minimum is not sanctionable but rather is a common and appropriate litigation strategy. See Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1350 (2013) ("federal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court . . . by stipulating to amounts at issue that fall below the federal jurisdictional requirement").

11

time of removal. Noyola v. State Farm Lloyds, No. 7:13-CV-146, 2013 WL 3353963, at *3 (S.D. Tex. July 3, 2013); see also Costin, 2013 WL 4828576, at *2 (noting inconsistency in plaintiff's argument against federal jurisdiction based on lack of $75,000 in controversy, while avoiding placing a cap on her potential recovery); Terry v. Ford Motor Credit Co., No. CA 06-349S, 2006 WL 3455076, at *2 (D.R.I. Nov. 27, 2006) (post-removal stipulation making recovery of more than $74,999 impossible, coupled with lack of evidence that amount in controversy ever exceeded $75,000, results in remand). In light of the other evidence establishing that the amount in controversy for at least R.W.H.'s claim exceeds $75,000, I afford little weight to Plaintiffs' refusal to stipulate that their claims are worth less than $75,000, but rather consider it merely as some evidence tipping the scale in favor of federal jurisdiction.

### III. CONCLUSION

Based on the foregoing, I find that R.W.H.'s claim puts into controversy an amount exceeding the diversity jurisdictional minimum of $75,000, and that his parents' claims fall within this Court's supplemental jurisdiction. Accordingly, I recommend that Plaintiffs' motion to remand and for sanctions (ECF No. 4) be denied.

Any objections to this report and recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days after the date of service. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 27, 2013